UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

TIMOTHY GREEN,

        Plaintiff,

     -v-                                No. 06 Civ. 4978 (LTS)(KNF)

CITY OF NEW YORK DEPARTMENT
OF CORRECTIONS, OFFICER BEE, CAPTAIN
GASELLE, OFFICER BRAXTON and
WARDEN FRANK SQUILLANTE,

        Defendants.

--------------------------------------------------------x

### OPINION AND ORDER

        <u>Pro se</u> Plaintiff Timothy Green ("Plaintiff"), brings this action pursuant to 42 U.S.C.

§ 1983. Plaintiff asserts that, while he was in the custody of the Defendant New York City

Department of Corrections ("NYC DOC"), Defendants Officer Bee ("Bee"), Captain Gaselle

("Gaselle"), Officer Braxton ("Braxton") and Warden Frank Squillante ("Squillante") (collectively,

"Defendants") violated his constitutional rights when, after he discovered that he had erroneously

been designated as gang-affiliated and brought the error to Defendants' attention, the designation

was not corrected. Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure to dismiss Plaintiff's Amended Complaint.[1] The Court has jurisdiction of this action

pursuant to 28 U.S.C. § 1331.

---

      [1]        Plaintiff's opposition papers purport to assert a cross-motion for summary judgment. Because his motion is not accompanied by evidence sufficient to demonstrate his entitlement to relief as a matter of law and because, as explained below, his complaint fails to state a claim upon which relief can be granted, Plaintiff's cross-motion is denied.

Two Defendants, Bee and Gaselle, have not yet been served with the summons and original complaint and it is not always clear in Defendants' papers whether the motion is made on behalf of all Defendants or only the served Defendants, but it is not necessary to resolve whether the motion to dismiss is interposed on behalf of Bee and Gaselle as well, since Defendants' arguments are equally applicable to Bee and Gaselle. Therefore, for the sake of simplicity, the Court uses the term "Defendants" to apply to all Defendants.

The Court has considered thoroughly all of the parties' submissions. For the following reasons, Defendants' motion to dismiss the Amended Complaint is granted.


BACKGROUND

The following relevant facts are alleged in Plaintiff's Amended Complaint unless otherwise stated, and are taken as true for purposes of this motion practice.[2] Plaintiff is not and was never affiliated with a gang called "the Netas." However, on or about January 2, 2006, while Plaintiff was incarcerated at Otis Bantum Correctional Center ("Otis Bantum"), a facility run by NYC DOC, a prison officer informed Plaintiff that the prison had classified him as "Security Risk Gang-Related" ("SRG status"), because of his supposed affiliation with the Netas. The officer directed Plaintiff to speak with Defendant Officer Bee, who was in charge of security at Otis Bantum, in order to correct the mistake.

After Plaintiff met with Bee[3] and told Bee that he was not a gang member and had

---

[2]     The relevant allegations contained in the Amended Complaint are set forth in a "Statement of Facts" section which has been inserted between pages 3 and 4 of the printed form sections of the Amended Complaint.

[3]     It is not clear when this meeting with Bee allegedly occurred but, based on the other dates mentioned in the Amended Complaint, it appears to have occurred sometime between January and March 2006.

never been affiliated with the Netas, Bee accessed the prison's computer system and discovered that Plaintiff's name and identification number were erroneously associated with a picture of another inmate. Bee explained that Plaintiff had been under SRG status since 1995, that there was a mistake and that she would "take care of" the problem.

For the next three weeks, Plaintiff did not receive word from Bee, and his SRG status remained unchanged. He then spoke with the grievance coordinator at Otis Bantum, who advised Plaintiff to speak to Defendant Captain Gaselle, who also worked in security. Plaintiff then met with Gaselle, who had already learned of Plaintiff's situation from Bee. Gaselle informed Plaintiff that the problem would "be taken care of." The SRG status was not removed.

On April 11, 2006, Plaintiff filed a complaint with the City of New York Department of Investigations ("DOI") concerning his erroneous SRG status. Soon after, Bee informed Plaintiff that a commissioner with the DOI had notified Bee of Plaintiff's complaint, and Bee again assured Plaintiff that she would "take care of" the issue, but she did not correct the error.

During the time that these alleged interactions took place at Otis Bantum, Plaintiff resided in "higher classification" housing.[4]

On April 26, 2006, Plaintiff was transferred from Otis Bantum to Eric M. Taylor Center ("Eric M. Taylor"), another NYC DOC facility. Upon arrival, Plaintiff inquired as to whether he was designated with SRG status and was told that he was not. He was also cleared to work outdoors.

However, on May 8, 2006, Plaintiff's outdoor work clearance was revoked and he

---

[4] Plaintiff does not specifically allege when he was placed in "higher classification" housing at Otis Bantum, stating only that he was in such housing at least from January to April 2006. It is not clear whether he was placed in "higher classification" housing in 1995, when he was allegedly first designated with SRG status.

was moved to "higher classification" housing and prevented from working altogether.  He was then informed that he was classified as SRG status.  On May 11, 2006, Plaintiff explained his situation to Defendant Officer Braxton, who worked in security at Eric M. Taylor.  Braxton ran a computer check and found, as Bee had several months previously, that Plaintiff's name and identification number were erroneously associated with the picture of another inmate.  Braxton informed Plaintiff that she would "take care of this," and Plaintiff gave her some paperwork containing documentation of Plaintiff's attempts to resolve his SRG situation.  On May 18, 2006, Braxton informed Plaintiff that Defendant Warden Squillante had received the paperwork.  Furthermore, she confirmed that Plaintiff had been erroneously under SRG classification since 1995, and told him that the SRG status would be removed on May 24, 2006.  At the time of Plaintiff's filing of the Amended Complaint, August 29, 2006, his SRG status remained the same.[5]

According to the Amended Complaint, because of Plaintiff's SRG status at Otis Bantum, and for most of the time at Eric M. Taylor, Plaintiff was "harassed," subjected to random strip searches, and prevented from working.  Plaintiff also complains of emotional distress and harm to his reputation.  Plaintiff further alleges generally that his safety was put in jeopardy because of the SRG classification, though there is no allegation that Plaintiff, or any other person classified as SRG, has suffered physical harm as a result of such a classification or alleged gang

---

[5]     After describing the second conversation between Plaintiff and Bee, which took place sometime between April 11 and April 26, 2006, the Amended Complaint asserts, "However this matter was never corrected or resolved and it had [sic] now been 4 months later."  (Am. Compl. II.D.)  Documents annexed to Defendants' motion papers indicate that the designation was removed in June 2006.  (Decl. of Basil C. Sitaras dated Oct. 19, 2006, Ex. B.)

affiliation.[6]

        In an affidavit submitted with his opposition papers Plaintiff avers that, as a result of his widely-known SRG status—specifically, the belief that he is a member of the Netas—he has been subjected to threats on his life from gang members as well as from prison staff. (Aff. of Timothy Green dated Nov. 2006 ("Green Aff.") ¶ 5.) Plaintiff alleges that he has been approached on more than one occasion with "life threatening [g]estures" and that, on one occasion, an inmate member of another gang told Plaintiff to move off of Rikers Island (where the facilities are located) because, no matter where Plaintiff went, his life would be threatened. (Id.) As an example of how others might easily associate Plaintiff with the Netas, Plaintiff avers that, at church services, inmates alleged to be Neta members are visibly segregated from other inmates. (Id.) Plaintiff further alleges in his affidavit that the SRG status of any inmate may be ascertained through "FOIL," to which staff members have access, and that staff members with allegiances to various gangs will perform FOIL inquiries on gang members' behalf to unearth the gang affiliations of other inmates in exchange for a fee or other favors. (Id. ¶ 6.) Plaintiff also asserts generally that inmates and staff who are made aware of Plaintiff's alleged Neta status freely spread the word, further jeopardizing his safety with respect to rival gang members and/or prison staff. (Id. ¶ 7.)

        The affidavit does not allege that any of the individual Defendants knew about or participated in any way in the alleged threats to Plaintiff by other inmates or prison staff. Plaintiff does not allege that he was ever physically harmed as a result of his perceived affiliation with the Netas, nor does he allege that others actually, or perceived to be, affiliated with the Netas have been

---

[6]    In Part III of the complaint form, where the heading reads: "If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received," Plaintiff typed: "none".

harmed physically because of SRG status or perceived affiliation with the Netas.

Plaintiff seeks compensatory (pain, suffering and emotional distress) and punitive damages against the Department of Corrections, on the basis of the alleged reputational harm arising from the false identification as a Netas affiliate, the alleged threats and personal danger, work and housing conditions and strip searches. Because only the Department of Corrections is mentioned in Plaintiff's demand for relief, the nature of the claims he is seeking to assert against the individual Defendants is unclear.


## DISCUSSION

In considering a motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true the material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. Grandon v. Merrill Lynch & Co., Inc., 147 F.3d 184, 188 (2d Cir. 1998); Torres v. Mazzuca, 246 F. Supp. 2d 334, 338 (S.D.N.Y. 2003). This rule "applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted pro se." Fernandez v. Chertoff, 471 F.3d 45, 52 (2d Cir. 2006). Moreover, complaints prepared by pro se plaintiffs should be construed liberally, held to "less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007), and interpreted "to raise the strongest arguments that they suggest." Knight v. Keane, 247 F. Supp. 2d 379, 383 (S.D.N.Y. 2002) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Specific facts are not necessary so long as the pleading "give[s] the defendants fair notice of what the claim is and the grounds upon which it rests." Erickson, 127 S.Ct. at 2200 (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) and Fed. R. Civ. P. 8(a)(2)).

Nonetheless, a pleader must also "amplify a claim with some factual allegations in

those contexts where such amplification is needed to render the claim <u>plausible</u>." <u>Iqbal v. Hasty</u>,
490 F.3d 143, 157-58 (2d Cir. 2007) (citing <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007)).
The complaint "must contain specific allegations of fact which indicate a deprivation of
constitutional rights; allegations which are nothing more than broad, simple and conclusory
statements are insufficient to state a claim under § 1983." <u>Torres</u>, 246 F. Supp. 2d at 338 (quoting
<u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 887 (2d Cir. 1987)).

Defendants argue that the Amended Complaint must be dismissed insofar as it
asserts claims against NYC DOC because NYC DOC is not a separately suable entity. Defendants
also assert that the Amended Complaint should be dismissed in its entirety for failure to state a
claim upon which relief can be granted, and that Defendants Squillante and Braxton are entitled to
qualified immunity.

The Amended Complaint is titled, "Amended Complaint under the Civil Rights Act,
42 U.S.C. § 1983," and no other federal statutory or constitutional provisions are mentioned in the
body of Plaintiff's Amended Complaint. Plaintiff refers to "defamation of Character[,] Slander,
Libel, Negligence and Harrassment [sic]" in connection with Plaintiff's demand for money
damages from the Department of Corrections. Construing its allegations liberally, the Court
interprets the Amended Complaint as asserting claims pursuant to 42 U.S.C. section 1983 for (1)
violation of Plaintiff's Fourteenth Amendment right to freedom from the deprivation of liberty
without due process of law, based on his complaints regarding his conditions of confinement, and
(2) violation of his Eighth Amendment right to freedom from cruel and unusual punishment insofar
as he appears to claim that the defendant officers were deliberately indifferent to the threats and
other deprivations he allegedly suffered as a result of the erroneous SRG designation, in addition to
various state common law claims. In so construing the Amended Complaint, the Court has

considered the facts alleged within the body of the complaint as well as the additional facts

proffered in the affidavit Plaintiff submitted with his opposition papers.


*New York City Department of Correction is not a suable entity*

Plaintiff's action must be dismissed in its entirety as to Defendant NYC DOC.

Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, a city agency's capacity to be sued

is determined by the law of the state where the court is located.  Section 396 of the New York City

Charter provides that "all actions and proceedings for the recovery of penalties for the violation of

any law shall be brought in the name of the City of New York and not in that of any agency, except

where otherwise provided by law."  N.Y.C. Charter § 396.  As an agency of the City of New York,

the Department of Corrections thus is not a suable entity.  See Maurice v. New York City Dep't of

Corrections, No. 93 Civ. 6008 (JFK), 1997 WL 431078, *2 (S.D.N.Y. July 30, 1997); Romano v.

New York City Dep't of Corrections, No. 95 Civ. 0302 (CSH), 1996 WL 233689, *1 (S.D.N.Y.

May 7, 1996).

The complaint must, accordingly, be dismissed as against Defendant NYC DOC.

Plaintiff will, however, be granted leave to reassert his Fourteenth Amendment claim as against

New York City itself, since his complaint clearly reflects an effort to assert a claim against the

governmental entity in addition to the individual Defendants.  While Plaintiff's allegations of

repeated failures by different individuals at different institutions to correct the SRG designation

might conceivably be read to suggest an allegation of harm due to a policy or practice, Plaintiff is

cautioned that he must make clear the factual basis of any federal claim he is asserting against the

City of New York, because the municipality can only be held liable if the violation complained of is

the product of a municipal policy, custom or practice.  See generally Monell v. New York City

<u>Dept. of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978).

*Fourteenth Amendment Claim*

<u>Nature of Claim</u>

Plaintiff alleges that, because of his SRG designation, he suffered deprivations of liberty with respect to his assignment to "higher classification" housing, revocation of work privileges and subjection to random strip searches. His allegations further suggest that his Neta/SRG designation operated as a stigma and harmed his reputation, resulting in threats to his life from other inmates as well as prison staff. Plaintiff claims that, by acknowledging the erroneous gang designation yet failing to correct it, Defendants have deprived Plaintiff of his liberty without due process of law.

To succeed on a Fourteenth Amendment procedural due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process. <u>Giano v. Selsky</u>, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation omitted). To determine whether a plaintiff prisoner alleging a deprivation of liberty as a result of conditions of confinement has identified a protected liberty interest, the Court must examine whether the state has created the liberty interest by statute or regulation and whether the alleged deprivation constitutes an atypical and significant hardship. <u>Sandin v. Connor</u>, 515 U.S. 472, 484 (1995); <u>Iqbal v. Hasty</u>, 490 F.3d 143, 161 (2d Cir. 2007) (quoting <u>Tellier v. Fields</u>, 280 F.3d 69, 80 (2d Cir. 2000) (citing and quoting <u>Sandin</u> 515 U.S. at 484; <u>Sealey v. Giltner</u>, 116 F.3d 47 (2d Cir. 1997))).

The Court finds that Plaintiff's allegations concerning the official SRG designation, the attendant prison-imposed deprivations flowing from that designation, and the hardships

suffered in the form of regular death threats from staff and other inmates sufficiently plead the plausible existence of a liberty interest of which he was deprived without due process.  Cf. Neal v. Shimoda, 131 F.3d 818, 829-30 (9th Cir. 1997) (noting that the "classification of an inmate as a sex offender is precisely the type of 'atypical and significant hardship' . . . that the Supreme Court held created a protected liberty interest," because of "the stigmatizing consequences of the attachment of the 'sex offender' label").  Plaintiff's Fourteenth Amendment claims as against the individual Defendants are, however, barred by the doctrine of qualified immunity.

Qualified Immunity

"Qualified immunity is an immunity from suit and not just a defense to liability." Iqbal, 490 F.3d at 152 (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).  If the alleged facts, taken as true, plausibly plead a violation of a constitutional right, as is the case here, the Court must determine whether that right was clearly established at the time of the challenged action, id., that is, whether "the contours of the right [were] sufficiently clear in the context of the alleged violation such that a reasonable official would understand that what he [was] doing violate[d] that right."  Id. (quoting Saucier, 533 U.S. at 250-51).  "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established."  Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004).

The notion that stigmatic harm, especially to the extent that it does not involve any showing of actual physical harm, can rise to the level of "atypical and significant hardship" in the prison context has been raised in other circuits, see, e.g., Kirby v. Siegelman, 195 F.3d 1285, 1289-92 (11th Cir. 1999); Chambers v. Colorado Dep't of Corrections, 205 F.3d 1237, 1243 (10th Cir. 2000), but has not been recognized by the Second Circuit or the Supreme Court, see Tinsley v. Goord, No. 05 Civ. 3921 (NRB), 2006 WL 2707324, *5 (S.D.N.Y. Sept. 20, 2006); Vega v. Lantz,

No. 3:03-cv-2248 (PCD), 2007 WL 3025285, *2 (D. Conn. Oct. 16, 2007).  Nor has the Court's research disclosed any Supreme Court or Second Circuit opinion existing at the time of the alleged deprivations of liberty (or at anytime thereafter) that would clearly foreshadow a particular ruling that the facts pleaded by Plaintiff would establish a constitutional violation, see Tellier, 280 F.3d at 83 (law is "clearly established" so long as this "circuit's decisions clearly foreshadow a particular ruling on the issue") (quotations and citations omitted), especially given that most Second Circuit opinions applying Sandin have dealt with administrative segregation, see Onwuazombe v. Dodrill, No. 07 Civ. 873 (DLC), 2008 WL 1758641, *4 (S.D.N.Y. Apr. 16, 2008) ("most of the Second Circuit cases that rely on Sandin concern segregated confinement"), and have not involved any allegation of stigmatic harm.  See also Neal, 131 F.3d at 832 (granting qualified immunity because holding that stigmatic harm arising from sex offender label could rise to level of atypical and significant hardship was not clearly established in Ninth Circuit prior to Neal itself); Chambers, 205 F.3d at 1244 (to same effect with respect to Tenth Circuit).  Because the individual Defendants are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim, Defendants' motion to dismiss Plaintiff's Amended Complaint to the extent that it asserts a procedural due process claim against them is granted.

### Eighth Amendment Claim

The Court has also construed Plaintiff's submissions to be asserting a violation of his Eighth Amendment right to freedom from cruel and unusual punishment, insofar as he appears to claim that Defendants were deliberately indifferent to the threats and other deprivations he allegedly suffered as a result of the erroneous SRG designation.

A prison official's failure to prevent harm to a prisoner violates the Eighth

Amendment if the official is deliberately indifferent to a substantial risk of serious harm posed by the conditions faced by the prisoner. Farmer v. Brennan, 511 U.S.825, 834 (1994). Although the death threats alleged by Plaintiff were sufficiently atypical and significant for purposes of implicating Plaintiff's liberty interests under the Fourteenth Amendment, the mere existence of such threats, without any allegation that physical harm actually existed or was imminent during the entire six or seven month period in which he was allegedly subjected to such threats, or without any allegation that any inmate perceived to be a Neta member was physically harmed, do not render plausible Plaintiff's claim that he was subject to a substantial risk of serious harm. See Chalif v. Spitzer, No. 9:05-CV-1355 (LEK/DEP), 2008 WL 1848650, *9 (N.D.N.Y. Apr. 23, 2008) (plaintiff did not allege a substantial risk of serious harm, where plaintiff alleged "credible threats" and subjection to "psychological torture by imminent threat of death" by defendants, without any allegation that "he was assaulted by any fellow inmates, or that such an assault was threatened and imminent"). Not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety," Farmer, 511 U.S. at 834, and this is especially the case with respect to verbal threats unaccompanied by any physical act or any indication that the threat will be carried out. See generally Richardson v. Castro, No. 97 CV 3772 (SJ), 1998 WL 205414, *5 (E.D.N.Y. Apr. 24, 1998) ("verbal threats or abuse are insufficient to state a constitutional violation pursuant to 42 U.S.C. § 1983. Moreover, verbal threats do not violate the constitution 'unless accompanied by physical force or the present ability to effectuate the threat'") (quoting Jermosen v. Coughlin, 989 F. Supp. 444, 449 (N.D.N.Y. 1995)); Davis v. Sancegraw, 850 F. Supp. 809, 813 (E.D. Mo. 1993) ("Verbal insults or threats generally do not rise to the level of a constitutional violation. The only exception to this rule is when the verbal threat rises to the level of a 'wanton act of cruelty' such that the inmate is in fear of 'instant and

unexpected death at the whim of his . . . custodians'") (quoting <u>Burton v. Livingston</u>, 791 F.2d 97, 99-100 (8th Cir. 1986) (complaint stated Eighth Amendment claim where prison official allegedly pointed a lethal weapon at plaintiff, cocked it, and threatened him with instant death)).  Nor do Plaintiff's allegations of general "harassment," strip searches, or the revocation of work privileges render plausible any claim that Plaintiff faced a "substantial risk of serious harm" as a result of his SRG designation.  <u>See</u> <u>Merritt v. Hawk</u>, 153 F. Supp. 2d 1216, 1222 (D. Colo. 2001) ("allegations of removal of property from his cell by defendants, strip searches, deprivation of fresh air and exercise, deprivation of medical care, and verbal threats and acts of harassment such as coughing on or spitting in his food . . . not . . . sufficient to state a conditions of confinement claim under the Eighth Amendment").  Therefore, Plaintiff has failed to set forth any plausible claim that he was subjected to a substantial risk of serious harm.  Absent the requisite substantial risk of serious harm, Plaintiff cannot prove a deliberate indifference claim.

Plaintiff cites several cases acknowledging the risks that some prisoners face when they are labeled as "snitches," and argues by analogy that he faced a similar risk of harm resulting from his false affiliation with the Netas.  Plaintiff, however, has alleged no fact from which a factfinder could infer that the risk of harm faced by Plaintiff or those NYC DOC inmates thought to be members of a particular gang is equivalent to the risk faced by inmates labeled "snitches" as described in the cases upon which Plaintiff relies.  In the cases cited by Plaintiff in which courts found viable Eighth Amendment claims premised on being labeled a "snitch," there were allegations or proffered evidence of actual physical harm.  <u>See</u> <u>Hendrickson v. Emergency Med. Servs.</u>, No. CIV.A. 95-4392, 1996 WL 472418, *5 ("Plaintiff alleges that prison employees have called him a 'snitch' in front of other inmates and that this has resulted in assaults and threats from other inmates"); <u>Northington v. Jackson</u>, 973 F.2d 1518, 1525 (10th Cir. 1992) (reversing dismissal

of Eighth Amendment claim where inmate alleged that "he was severely beaten on two occasions by groups of inmates" because he was labeled a snitch); Harmon v. Berry, 728 F.2d 1407, 1408 (11th Cir. 1984) (claim not frivolous where attack was alleged). Therefore, Plaintiff's "snitch" analogy is not sufficient to frame a plausible pleading of a substantial risk of serious harm, and Defendants' motion to dismiss is granted to the extent that the Amended Complaint asserts an Eighth Amendment claim under Section 1983.

Because the Court finds that the individual Defendants are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim and that Plaintiff has failed to state a viable Eighth Amendment claim, the Court does not need to address Defendants' arguments regarding dismissal on the basis of 28 U.S.C. § 1997e(e) or the failure to allege personal involvement. To the extent that Plaintiff's suit asserts state law claims against the individual Defendants for negligence, defamation or any other state common law claim, the Court declines to exercise supplemental jurisdiction of such claims pursuant to 28 U.S.C. § 1367(c)(3).

Plaintiff has not requested leave to amend either in his opposition papers or in his sur-reply. Given the allegations in the Amended Complaint and the additional allegations set forth in Plaintiff's opposition papers, in light of the nature of relief requested, the Court finds that any attempt by Plaintiff to amend his Amended Complaint in an attempt to raise claims against the individual Defendants would be futile. Accordingly, Plaintiff's claims against Defendants Bee, Gaselle, Braxton, and Squillante are dismissed with prejudice.

However, as explained above, because Plaintiff states a plausible Fourteenth Amendment claim and appears to raise allegations suggesting that the individual Defendants' actions were the result of municipal policy or custom, and because the doctrine of qualified

immunity does not apply to municipalities, Plaintiff will be granted leave to replead his Fourteenth

Amendment claim, along with related state common law claims, <u>only</u> against the City of New

York. Any such Second Amended Complaint must include the allegations sworn to in the affidavit

Plaintiff submitted with his opposition papers, in addition to specific facts identifying the basis of

his claim against the City of New York.


<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint

is granted. All of Plaintiff's claims against all of the named Defendants are dismissed with

prejudice, but Plaintiff is granted leave to replead his Fourteenth Amendment claim, as well as

related state common law claims, as against the City of New York only, incorporating the

allegations contained in Plaintiff's affidavit accompanying his opposition papers, in a Second

Amended Complaint. The Court's Pro Se office is requested to issue Plaintiff an Amended

Summons and to provide Plaintiff all the necessary paperwork so that service of both the Amended

Summons and the Second Amended Complaint may be effected on the City of New York should

Plaintiff choose to do so. Should Plaintiff have any questions concerning service, he may contact

the Pro Se office at 212-805-0177.

If a Second Amended Complaint is not filed and served within **60 days** of the

issuance of this Opinion and Order, Plaintiff's entire suit will be dismissed with prejudice and the case will be closed with no further advance notice to Plaintiff. The Clerk of Court is respectfully requested to terminate Docket Entries Nos. 15 and 17.

SO ORDERED.

Dated:     New York, New York
           June 19, 2008

                                              LAURA TAYLOR SWAIN
                                              United States District Judge